IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Jonathan C. Harris,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Joseph Richardt,<br><br>　　　　Defendant. | Case No. 15 CV 5563<br><br>The Honorable Jorge L. Alonso |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

　　Defendant, Joseph Richardt, by his counsel, Ellen K. Emery and Lucy B. Bednarek of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., moves this Court pursuant to Federal Rule of Civil Procedure 50(a) for Judgment as a Matter of Law. In support of this motion, Defendant states as follows:

**I. INTRODUCTION**

　　Federal Rule of Civil Procedure 50(a) provides that "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may grant a motion for judgment as a matter of law against the party." When ruling on a motion for judgment as a matter of law, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Lobby*, 477 U.S. 242, 252 (1986).

　　Plaintiff Jonathan Harris brought this Section 1983 excessive force action against Zion Police Officer Richardt for injuries arising from a police shooting of Harris that took place on June 3, 2014.

1

Defendant is entitled to judgment as a matter of law on Harris' excessive force claim because plaintiff presented no evidence to establish that Officer Richardt's use of force was not justified under the circumstances.

## II.  THE EVIDENCE

The evidence shows the following: On the afternoon of June 3, 2014, Zion police officers Joseph Richardt and Derek Zaloudek initiated a traffic stop of a black Dodge Charger near the 2300 block of Lewis Avenue in Zion, Illinois. Plaintiff Jonathan Harris was the driver, and he had two passengers in the car. Jennifer Smith was seated in the front passenger seat, and Andrew Ayers was seated in the back seat behind Smith. Officer Richardt approached plaintiff's side of the car, and Officer Zaloudek approached Smith's side of the car. When asked for his driver's license and proof of insurance, plaintiff handed Officer Richardt a temporary driving permit, a rental car agreement, and fleet insurance -- all registered to a Joshua Ferguson.

Officer Richardt determined that plaintiff was driving without a valid license and decided to place plaintiff under arrest. Because there were three individuals and only two officers, Richardt called for another officer to respond to the scene to provide backup. Soon after, Sergeant Duane Arrington arrived on scene. By that time, Smith had stepped out of the car, and was speaking with Officer Zaloudek on the side of the road. Ayers remained in the back seat.

When Sergeant Arrington arrived and began approaching the car, plaintiff said "Uh oh." Officer Richardt motioned for Arrington to come over by him. When Arrington was standing next to him, Richardt attempted to arrest plaintiff. Richardt noticed the car door was locked and pulled the mechanism to unlock the door. He then opened the driver side front door and at the same time asked plaintiff to step out of the car. Instead of getting out of the car, plaintiff grabbed

2

the gear shifter in the center consul, put the vehicle into drive and sped off. Ayers was still in the backseat of the car.

Officer Richardt yelled at the driver to put the vehicle in park. Plaintiff ignored him and continued to accelerate rapidly, dragging Richardt along with the car. Richardt was holding onto plaintiff with his right hand and part of the car with his left hand. As the car accelerated and he was being dragged along with the car, Richardt knew he was in danger. He made a split second decision to step inside the car and hold on to avoid being run over or thrown into oncoming traffic and severely injured. He was very near plaintiff while holding on to something inside the car, likely the steering wheel. Richardt was not straddling plaintiff. Rather, Richardt was halfway in and halfway out of the car. Richardt repeatedly told plaintiff to stop the vehicle, but plaintiff refused. Richardt could hear the engine as they drove down the street and the wind rushing outside the car.

Further, the car door was open behind Richardt and he believed he could easily fall out of the car and be killed. He did not know if plaintiff or Ayers were armed. Richardt feared for his own life and the lives of the individuals in the car. He drew his firearm from his holster with his right hand. Richardt told the driver to stop or that he would kill him. Plaintiff did not stop but continued to accelerate.

Officer Richardt knew if this continued the car would continue to travel faster and he would be in a more dangerous situation. He, or the other occupants in the car, could likely die. Richardt did not want to shoot plaintiff in the head or chest because he did not want to kill plaintiff or shoot Ayers, who was still in the backseat of the car. Instead, Richardt followed his training and shot plaintiff in the pelvic girdle. He was trained that shooting someone in the pelvic girdle is way to stop a threat. Richardt put his firearm to the left side of plaintiff's pelvis and shot

plaintiff twice at a downward angle. Immediately after Richardt shot plaintiff, plaintiff braked and the car slowed and stopped. Shooting plaintiff stopped the threat to Richardt, Ayers and all motorists and pedestrians in the area – a threat that plaintiff created. Richardt immediately requested an ambulance to respond to the scene. Plaintiff was placed under arrest and was taken to the hospital.

Officer Zaloudek also testified that as plaintiff sped off, he observed Officer Richardt hanging half in and half out of the car. Zaloudek feared Richardt would be killed if he fell out of the car or was struck from the vehicles in traffic. As Richardt was being dragged away by plaintiff's car, Zaloudek observed Sergeant Arrington get hit by a part of plaintiff's car, causing Arrington to flip around, and fall and strike his head on the ground. Zaloudek then heard two gunshots and saw the car come to a quick stop. Zaloudek did not know who did the shooting. He called out on the radio that shots were fired, and ran to plaintiff's car to assist Richardt.

As a result of this incident, on June 24, 2015, plaintiff pled guilty to Aggravated Fleeing or Attempting to Elude a Peace Officer (Enhanced) in Case No. 14 CF 1676 (Lake County, Illinois). Plaintiff was sentenced to 82 months incarceration at the Illinois Department of Corrections.

Plaintiff admits to attempting to flee to avoid arrest. Plaintiff also admits that if he had not put his vehicle in drive but rather, would have stayed and obeyed Officer Richardt's commands, he would not have been shot.

**III.   OFFICER RICHARDT'S USE OF FORCE WAS JUSTIFIED.**

To establish his case under Section 1983, plaintiff bears the burden of proving by a preponderance of the evidence that Officer Richardt's use of force was unreasonable under the circumstances. As a matter of law, Richardt's use of force was justified here.

4

A police officer's use of deadly force is a seizure subject to the reasonableness requirements of the Fourth Amendment. *Tennessee v. Garner*, 47 U.S. 1 (1985). Deadly force is justified if the officer reasonably believes it is necessary to protect himself or another from death or great bodily harm. *Id.*; *Pena v. Leombruni*, 200 F.3d 1031 (7th Cir. 1999).

The court's inquiry focuses on "whether the officer's decision to use deadly force was *objectively* reasonable." *Maravilla v. United States*, 60 F.3d 1230, 1233 (7th Cir. 1995)(emphasis in original). Whether Richardt acted reasonably in shooting plaintiff must be determined "in light of the facts and circumstances confronting [him] at the moment [he] acted." *Maravilla*, at 1233, (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In addition, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396-97. The reasonable force analysis considers the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

When an officer believes that a suspect's actions place him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force. *Muhammed v. City of Chicago,* 316 F.3d 680, 683 (7th Cir.2002). Further, if the suspect threatens the officer with a weapon, the risk of serious physical harm to the officer or others has been established. *Bell v. Irwin,* 321 F.3d 637, 639 (7th Cir.2003). See also *Plumhoff v. Rickard*, 134 S.Ct. 2012 (2014) (no excessive force found when suspect was killed by police in high speed car chase after police fired 15 shots into his vehicle);

*Scott v. Harris,* 550 U.S. 372 (2007) (finding that "the car chase that respondent initiated in this case posed a substantial and immediate risk of serious physical injury to others" and the officer's attempt to terminate the chase by forcing respondent off the road was reasonable).

Plaintiff's attempt to flee the scene, and his failure to stop the car with Officer Richardt hanging onto to it was sufficiently lethal and imminent to justify Richardt's use of deadly force. These circumstances show plaintiff placed himself, Ayers and Richardt in imminent danger of serious bodily injury or worse.

Plaintiff was in control of and threatening Officer Richardt's life with a deadly weapon – a 3000 pound car that could be used as a missile. Richardt was being dragged along with the car. With every second the car continued to accelerate, the missile was becoming even deadlier. Richardt was not required to wait to be thrown out of car and into oncoming traffic and run over before using deadly force to stop plaintiff. Significantly, Lewis Avenue was described as a busy street, with a 45 mph speed limit, and no median separating Richardt from the fast-moving cars traveling on the other side of the street.

Further, plaintiff was not only threatening Richardt's life as he sped away in reckless manner, but he also was threatening the life of passenger Ayers and the lives of all other pedestrians and motorists in the area. The evidence shows plaintiff never abandoned his attempt to flee. Plaintiff's recklessness in an attempt to evade arrest posed a "grave public safety risk." See *Plumhoff*, 134 S.Ct. at 2022.

If ever there was a "split-second judgment in circumstances that are tense, uncertain, and rapidly evolving," it was here. The facts are undisputed that plaintiff put the car in drive and sped away with Officer Richardt hanging onto car. It is also undisputed that plaintiff was trying to get away to avoid arrest and drove away recklessly. It is further undisputed that plaintiff

refused to slow down and did not slow down until he was shot. Notably, Richardt did not shoot to kill plaintiff. Rather, Richardt's intent when shooting plaintiff's pelvic girdle was to stop the threat created by plaintiff, not kill plaintiff.

The evidence shows Richardt's use of force was objectively reasonable in light of the facts and circumstances surrounding him when he acted. Therefore, this Court should grant judgment as a matter of law in favor of defendant Officer Joseph Richardt.

**IV. OFFICER RICHARDT IS ENTITLED TO QUALIFIED IMMUNITY**

In the alternative, Officer Richardt is entitled to qualified immunity. Qualified immunity applies to governmental employees performing discretionary functions and shields them from "liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 475 U.S. 800, 818 (1982); *Filarsky v. Delia,* 566 U.S. 377 (2012). When qualified immunity is raised, a two-part inquiry is triggered. The first inquiry addresses whether a plaintiff's complaint states a constitutional violation. The second examines whether the constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

In deadly force cases, qualified immunity shields a police officer from liability for civil damages if "a reasonable officer, facing the same situation, could have believed that deadly force was necessary to protect himself or others from death or serious physical harm." *Ellis v. Wynalda,* 999 F.2d 243, 246 (7th Cir.1993). This immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 229 (1991).

First, as explained above, no constitutional violation occurred because no excessive force in violation of the Fourth Amendment occurred. Second, qualified immunity protects Officer Richardt because a reasonable officer could have believed that shooting plaintiff was necessary to protect not only the officer's life, but the life of passenger Ayers, and pedestrians or motorists in the area. Plaintiff's actions of speeding off with Officer Richardt hanging half in and half out of the car created an imminent threat – a threat that the shooting stopped.

There is no settled Fourth Amendment principle that required Officer Richardt to let go of the car and risk being run over by plaintiff's car or thrown into oncoming traffic and killed himself before shooting plaintiff. See *White v. Pauly*, 137 S.Ct. 548 (2017). In other words, Richardt's attempt to terminate a dangerous situation that threatened his life and the lives of innocent bystanders does not violate the Fourth Amendment, even when it placed plaintiff at risk of serious injury or death. Further, it was not clearly established that it was unconstitutional to shoot a fleeing driver, like plaintiff, whose flight put Richardt's life and the life of others in danger. In *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014), the officers were entitled to qualified immunity in shooting a suspect in a high speed car chase because the shooting of plaintiff put to end a high speed pursuit that indisputably posed a danger to the officers involved and any civilians nearby – it was not clearly established that it was unconstitutional to shoot a fleeing driver to protect those whom his flight might endanger.

As in *Plumhoff*, plaintiff's flight posed a grave public safety risk and Officer Richardt acted reasonably in using deadly force to end that risk. As the Supreme Court recognized, it was not clearly established that it was unconstitutional to shoot a fleeing driver to protect those whom

his flight might endanger. *Id.* For these reasons, Officer Joseph Richardt is entitled to qualified immunity and this Court should grant judgment as a matter of law in favor of him.

>Respectfully submitted,
>
>By: /s/ Lucy B. Bednarek
>Lucy B. Bednarek

Ellen K. Emery
eemery@ancelglink.com
Lucy B. Bednarek
lbednarek@ancelglink.com
ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.
Attorneys for Defendant
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
(312) 782-7606

# CERTIFICATE OF SERVICE

      The undersigned, one of the attorneys of record herein, hereby certifies that on April 10, 2018, the foregoing **Defendants' Motion for Judgment as a Matter of Law** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, and mailed notification of such filing to the following:

Paul Henry Millewich
Law Offices of Steven H. Mevorah & Associates
134 North Bloomingdale Road
Bloomingdale, IL 60108
PMillewich@mevorahlaw.com

      /s/Lucy B. Bednarek
      LUCY B. BEDNAREK, ARDC #6269389
      *Attorney for Defendants*

      ANCEL, GLINK, DIAMOND, BUSH, DICIANNI
      & KRAFTHEFER, P.C.
      140 South Dearborn Street, Sixth Floor
      Chicago, Illinois 60603
      Telephone:   (312) 782-7606
      Facsimile:   (312) 782-0943
      E-Mail:   lbednarek@ancelglink.com

4825-8046-7807, V. 1